IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R & J HOLDING COMPANY, et al. :
    Plaintiffs,

v. : CIVIL ACTION
                                   NO. 06-1671

THE REDEVELOPMENT
AUTHORITY OF THE COUNTY :
OF MONTGOMERY, et al.
    Defendants.

JONES, J.                                                                   November 30, 2009

**MEMORANDUM**

**I.**     **Procedural History**

Currently before this Court are Motions to Dismiss by all Defendants in the above-captioned matter. This case involves quite an extensive and somewhat tortured history, which is best summarized by the Honorable Legrome D. Davis in a suit originally filed by Plaintiffs in 2002 and bears repeating herein:

> Plaintiff R & J Holding Company ("R & J Holding") is a Pennsylvania general partnership that owns the property known as 110 Washington Street, Borough of Conshohocken, Pennsylvania 19428 (the "Florig Property"). Compl. ¶ 1. Plaintiff RJ Florig Industrial Company, Inc. ("RJ Florig") is a Pennsylvania corporation that operates a steel processing business on the Florig Property. *Id.* at ¶ 2. Defendant Redevelopment Authority of the County of Montgomery (the "RACM") is a public entity established pursuant to the Urban Redevelopment Law (the "URL") of the Commonwealth of Pennsylvania, 35 Pa. Cons.Stat. Ann. § 1701, *et seq. Id.* ¶ 3. Defendant Donald W. Pulver ("Pulver") is the principal of Defendants Greater Conshohocken Improvement Corporation (the "GCIC") and TBFA Partners, L.P. ("TBFA"). *Id.* at ¶¶ 4-6.

1

On January 1, 1986, the RACM entered into an agreement (the "1986 Agreement") with the GCIC regarding the redevelopment of blighted areas in the Boroughs of Conshohocken and West Conshohocken. Compl. Ex. A at 1. Pursuant to Section 3(c)(4) of the 1986 Agreement, the RACM was to acquire by eminent domain properties in the Boroughs' specified project area and to convey them to the GCIC for development. *Id*. at 5. The RACM, however, could not exercise its eminent domain powers except at the specific request of GCIC. *Id*. at 6. The GCIC, in turn, was required to compensate the RACM for all costs incurred in connection with the acquisitions, and was to provide security for any takings in accordance with a formula set forth in the 1986 Agreement. *Id.* at 6-8.

On October 13, 1993, the RACM entered into another agreement (the "1993 Agreement") with the GCIC whereby the RACM agreed to "forthwith, commence legal acquisition proceedings against [the Florig Property]" and to "take whatever steps are necessary to acquire, pursuant to the Eminent Domain Code, and any other applicable statute, title to the fee and possession of [the Florig Property]." Compl. Ex. C at 2-3. The RACM was to fund the acquisition of the Florig Property by using the funds provided by a grant from the Commonwealth. *Id.* at 3-4. The GCIC, in turn, was to cover all direct condemnation costs that exceeded the Commonwealth's grant. *Id*. at 4. Finally, neither the Borough of Conshohocken nor the RACM was "authorized to file a Declaration of Taking of [the Florig Property] without the prior written consent of the [GCIC]." *Id.* at 7.

On March 14, 1995, the RACM entered into an agreement (the "Surety Agreement") with TBFA in which the rights and obligations of the GCIC under the 1993 Agreement were assigned to TBFA. Compl. Ex. D. at 1. Among the responsibilities and obligations which TBFA agreed to assume were those to pay any funds necessary for acquisition of the Florig Property which were not paid by the Commonwealth's grant, and to provide surety to the RACM that such payments would be forthcoming when due. Id. Pursuant to the Surety Agreement, TBFA posted security for the taking in the amount of $775,000 less $247,035 attributable to costs already paid. *Id*. This security was "posted to induce [RACM] to commence acquisition and condemnation proceedings in order to acquire the Florig [Property]." *Id*. at 2.

On July 11, 1996, the RACM filed a Declaration of Taking for the Florig Property. Compl. ¶ 31. On August 26, 1996, R & J Holding filed preliminary objections to the Declaration of Taking and, on June 4, 1997, it filed amended preliminary objections to the Declaration of Taking. *See Condemnation of 110 Washington St., Borough of Conshohocken, Pennsylvania, by the Redevelopment Auth. of the County of Montgomery, For Urban Renewal Purposes*, 767 A.2d

2

1154, 1157 (Pa.Commw.Ct.2001). The preliminary objections alleged that the Declaration of Taking be set aside because: (1) the RACM had unlawfully delegated its eminent domain powers to Pulver; (2) the RACM acted in bad faith condemning the subject property; and (3) TBFA posted inadequate security for the condemnation. *Id.*

On December 17, 1998, the Pennsylvania Court of Common Pleas issued an order (the "December Order") overruling R & J Holding's preliminary objections based on unlawful delegation and bad faith. *Id*. The court, however, determined that the security that had been posted was inadequate, and directed TBFA to post an additional $750,000 in security. *Id*. R & J Holding filed an appeal in the Pennsylvania Commonwealth Court. *Id.* R & J Holding asserted that the Court of Common Pleas erred in overruling its preliminary objection based on unlawful delegation and bad faith, and that the court's evidentiary errors during the hearing on the preliminary objections required a new hearing. *Id*.

On February 13, 2001, the Commonwealth Court held (the "February Order") that the Court of Common Pleas erred in overruling R & J Holding's preliminary objection to the Declaration of Taking filed by the RACM and, as a result, reversed the December Order. *Id*. Specifically, the Commonwealth Court found:

> It is clear that the actions of [the RACM] in this case were beyond those conferred by the URL. It is true that [the RACM] ultimately filed the Deceleration of Taking for [the Florig Property]. However, under the Agreements, [the RACM] was purportedly not authorized to take this action without Pulver's prior written consent. Thus, Pulver directed the condemnation of [the Florig Property]. [The RACM] was merely acting on Pulver's behalf. Such an exercise of eminent domain is clearly beyond the provisions of the URL, and is patently without authority of law. Moreover, any agreement which purportedly transfers such powers to a private individual must be deemed to be void and unenforceable. *Id*. at 1160.

On March 1, 2001, the RACM entered into an agreement (the "March Letter Agreement") with GCIC and TBFA whereby the GCIC and TBFA agreed to continue working with the RACM in connection with its redevelopment efforts in the Conshohockens. Compl. Ex. E. The March Letter Agreement provides:

> [T]he Board of the Redevelopment Authority has acted to appeal the decision of the Commonwealth Court to the Pennsylvania Supreme Court

and has authorized legal counsel for the [RACM] to file a petition for allocater seeking review of the Commonwealth Court order. The Redevelopment Authority seeks to reverse the order of the Commonwealth Court, to reinstate the validity of the aforementioned agreements and to uphold the condemnation of [the Florig Property].

*Id*. at 1. The March Letter Agreement further provides:

> If this letter is accepted by GCIC and TBFA, the Redevelopment Authority would continue to recognize GCIC as its developer within the area covered by the agreement dated as of January 1, 1986, and, in particular, the redeveloper of the [Florig Property] if and when such condemnation is successfully completed.... The obligations of the parties under the three contracts would continue with the exception that those provisions found by the Commonwealth Court to be in violation of public policy would be of no further force and effect on the parties unless and until a contrary decision is rendered by the Pennsylvania Supreme Court.

*Id.* at 2.

On March 13, 2001, the RACM filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania. Compl. ¶ 45. RACM's Petition was denied by the Supreme Court of Pennsylvania in an order, dated July 19, 2001. *Id*.

On December 31, 2002, Plaintiffs filed this action against Defendants pursuant to 42 U.S.C. § 1983, Article 1, §§ 1, 10, and Article 2, § 1 of the Constitution of the Commonwealth of Pennsylvania (the "Pennsylvania Constitution"), and various state laws. (Dkt. Entry No. 1). Counts One and Two of the Complaint allege that the RACM's ceding of its eminent domain powers to Pulver, GCIC, and TBFA violates the Due Process Clause of the Fourteenth Amendment and Article 1, Section 1, of the Pennsylvania Constitution. Compl. ¶¶ 60-71. Counts Three and Four of the Complaint allege that Defendants' actions violated the Takings Clause of the Fifth Amendment and Article 1, Section 10 of the Pennsylvania Constitution. *Id*. at ¶¶ 72-82. Count Five of the Complaint alleges that the RACM's ceding of its eminent domain powers to Pulver, GCIC and TBFA constituted an unlawful delegation of power in violation of Article 2, Section 1 of the Pennsylvania Constitution. *Id*. at ¶¶ 83-89. Count Six of the Complaint alleges that Pulver, the GCIC, and TBFA tortiously interfered with and prevented Plaintiffs' prospective contractual relationships, *Id*. at ¶¶ 90-98, and Count Seven of the Complaint alleges that Pulver, the GCIC, and TBFA intentionally harmed Plaintiffs' property interests in the Florig Property. Id. at ¶¶ 99-104.

> Defendants moved to dismiss all of Plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See Defendants Pulver and the GCIC's Memorandum of Law in Support of Their Motion to Dismiss ("Pulver's Mem.") 9, 18; Defendant TBFA's Memorandum of Law in Support of Its Motion to Dismiss ("TBFA's Mem.") 1; Defendant RACM's Memorandum of Law in Support of Its Motion to Dismiss ("RACM's Mem.") 8-9. Defendants asserted, inter alia, that their actions did not amount to a taking and that Plaintiffs' takings claim was not yet ripe. Pulver's Mem. 18-21; RACM's Mem. 9-13. Defendants further asserted that Plaintiffs' due process claim was barred by the statute of limitations. Pulver's Mem. 12-18; RACM's Mem. 11 n. 4. In response, Plaintiffs argued that they stated a valid takings claim and that the Court should stay their claim while they pursue an inverse condemnation claim against the RACM in Pennsylvania state court. Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss ("Pl.Mem.") 8-10 (Dkt. Entry No. 14); Plaintiffs' Sur-Reply Memorandum ("Pl. R. Mem.") 5-8 (Dkt. Entry No. 18). Plaintiffs also argued that their due process claim is not barred by the statute of limitations because the statute did not begin to run until the Pennsylvania Supreme Court dismissed the RACM's Petition for Allowance of Appeal on July 19, 2001 or, in the alternative, because Defendants, as evidenced by the March Letter Agreement, continue to engage in alleged unlawful and unconstitutional conduct in connection with the Florig Property. Pl. Mem. 18-23.

*R & J Holding Co. v. Redevelopment Authority of the County of Montgomery*, 2003 WL 22387034, **1-3 (E.D. Pa.. 2003).

Judge Davis ultimately granted Defendants' Motions to Dismiss, concluding that: (1) Plaintiffs' Takings/ remedy claims had not first been resolved by the state courts and were therefore not ripe; Plaintiffs' substantive federal due process claim was barred by the statute of limitations; and, because the Takings claims were not ripe, the District Court would decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.[1]

---

[1] Plaintiffs sought reconsideration of Judge Davis' Order, which was denied . *See R&J Holding Co. v. The Redevelopment Authority of the County of Montgomery,* 2004 U.S. Dist. LEXIS 2120 (E.D. Pa. Feb.11, 2004). This decision was affirmed on appeal, at which time the Third Circuit determined that: the two-year statute of limitations on property owners' § 1983 claim began to run either when owners had notice of filing of declaration of taking or, at the very latest, with the close of discovery in state court trial proceedings; and, Plaintiffs failed to establish continuing violation that tolled statute of limitations. *See R & J Holding Co. v.*

In accordance with Judge Davis' earlier determination, Plaintiffs commenced inverse condemnation proceedings in state court. During said proceedings, Plaintiffs asserted a takings claim under Pennsylvania law and the Commonwealth's Eminent Domain Code. At that time, Plaintiffs chose not to pursue their federal takings claim but instead, noted that they were reserving same for federal court. Upon conclusion of the inverse condemnation proceedings, the Honorable Joseph A. Smyth of the Montgomery County Court of Common Pleas ultimately found that a compensable taking occurred ". . . that was similar to a *de facto* taking," for which a remedy was found under the Eminent Domain Code. *R & J Holding Company and RJ Florig Industrial Company, Inc., v. The Redevelopment Authority of the County of Montgomery,* No. 04-3508 at 9 (Mont.Cty.Com.Pl. April 11, 2005). However, on appeal to the Commonwealth Court, the trial court's determination was reversed . . .

> In this case, R & J Holding already received costs and expenses under Section 408 of the Eminent Domain Code. Thus, they are not entitled to <u>any more</u> costs and expenses under any other Section of the Eminent Domain Code because the Code does not require that a condemnee be made whole. Moreover, R & J Holding is seeking damages under Section 502(e), which only applies when "no declaration of taking therefor has been filed." To apply this Section to this case, this Court would have to insert the word "valid" before "declaration of taking." Because a declaration of taking was filed in this case, damages under Section 502(e) are not available to R & J Holding.

*R & J Holding Co. v. Redevelopment Auth.*, 885 A.2d 643, 650 (Pa. Commw. Ct. 2005)(citations omitted)(emphasis added). The Commonwealth Court further noted that "[h]aving reached this conclusion, we do not need to address the Authority's remaining arguments." *Id.* n. 5. Accordingly, Plaintiffs ultimate reward of damages was $550,959.73 for fees, costs and expenses under 26 P.S. § 1-408.

---

*Redevelopment Authority of County of Montgomery*, 165 Fed.Appx. 175 (3rd Cir. Jan. 31, 2006).

Plaintiffs sought *allocatur* and the Pennsylvania Supreme Court denied same on March 21, 2006. Plaintiffs did not petition for *certiorari* but instead, commenced the within lawsuit, alleging an unconstitutional taking under the state and federal constitutions, violations of Section 1983, Unlawful Delegation of Power under the Pennsylvania Constitution, Tortious Interference with Prospective Contractual Relationships; and, Intentional Harm to Property Interest.[2] In sum, Plaintiffs' Complaint raises the same claims previously raised below in the state courts and in their 2002 federal Complaint.[3]

## II. DISCUSSION

All Defendants herein have moved to dismiss Plaintiffs' Complaint; the Redevelopment Authority of the County of Montgomery primarily bases its Motion on the principle of *res judicata* and Plaintiffs' failure to state a claim that Pennsylvania's Eminent Domain Code does not provide for appropriate damages, while Defendants Donald Pulver and Greater Conshohocken Improvement Corporation argue that Plaintiffs' claims are barred by the two year statute of limitations and that they have failed to properly plead said claims. Defendant TBFA Partners submits that both *res judicata* and the statute of limitations prevent Plaintiffs from succeeding with their instant claims, as well as the fact that Plaintiffs have failed to state a claim upon which relief may be granted for a "taking" pursuant to the Fifth and Fourteenth

---

[2] This matter was originally assigned to the Honorable R. Barclay Surrick but was reassigned to this Court on April 28, 2009.

[3] While in the process of drafting the instant Opinion, this Court received notice from Defendants Donald W. Pulver and the Greater Conshohocken Improvement Corporation's counsel that on November 18, 2009, Plaintiff R&J Holding Co. entered into an Agreement of Sale to sell the property herein at issue to an entity that is affiliated with Defendant Pulver. Although said Agreement expressly preserves the rights of both parties regarding this litigation, the closing date for the sale is scheduled to occur on March 15, 2010.

Amendments. All Defendants assert that Pennsylvania's Eminent Domain Code meets all constitutional requirements and that Plaintiffs' claims should therefore be dismissed with prejudice.

It is well-settled that in condemnation/takings matters :

> . . . [A party] has no constitutional right of action since Pennsylvania law provides for compensation. "The Pennsylvania Constitution and Eminent Domain Code fully preserve all the constitutional rights due plaintiffs with respect to the public taking, injury or destruction of private property." *De Voren Stores, Inc. v. Philadelphia*, 1990 U.S. Dist. LEXIS 1273, at *27 (E.D. Pa. Feb. 7, 1990), *aff'd*, 941 F.2d 1200 (3d Cir. 1991), quoting, *Kao v. Red Lion Municipal Auth.*, 381 F. Supp. 1163, 1166 (M.D. Pa. 1974).

Moreover, the Full Faith and Credit statute provides in pertinent part that:

*.*.*.*

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C.S. § 1738.

With specific regard to *res judicata* the Third Circuit has recognized that:

> In determining the applicability of principles of *res judicata*, we must give the same preclusive effect to the judgment in the common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered, would give. The Supreme Court of Pennsylvania has explained that *res judicata*: bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. **Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of**

8

> *the same cause of action*. For the doctrine of *res judicata* to prevail, Pennsylvania courts require that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued.

*Turner v. Crawford Square Apts. III, L.P.,* 449 F.3d 542, 548 (3d Cir. Pa. 2006)(citations omitted)(emphasis added).

In *Sorger v. Philadelphia Redevelopment Authority*, 401 F. Supp. 348, 351 (E.D. Pa. 1975), it was determined that the Court of Common Pleas had addressed the plaintiff's issues when ruling on its preliminary objections in a condemnation proceeding (the means by which the Code affords a party the opportunity to raise <u>any and all</u> defenses to the condemnation proceeding) and that said ruling was reviewed on appeal by the Commonwealth Court. Moreover, the plaintiff then sought allocatur from the Pennsylvania Supreme Court, which was denied. At the time the Honorable Raymond J. Broderick issued his opinion in *Sorger,* the plaintiff had not petitioned for *certiorari* from the United States Supreme Court. *Id.* at 352. Accordingly, the court concluded that the plaintiff was precluded by the doctrine of *res judicata* from re-raising the issues in federal court. To the extent that the plaintiff was raising a third issue which had not been decided by the lower court, Judge Broderick concluded that ". . . this is a relevant issue which <u>could have been presented and raised by the plaintiff in the state court litigation</u>. Therefore, the principle of res judicata clearly precludes the relitigation of this issue." *Id.* (emphasis added).[4]

---

[4] The *Sorger* court further noted:

> In *Hilliard v. Commonwealth of Pennsylvania*, a case which had the same procedural history as the instant litigation, the United States District Court for the Western District of Pennsylvania held that the prior adjudication in the state eminent domain proceeding, which was affirmed on appeal by the Supreme Court of Pennsylvania, foreclosed the plaintiffs from relitigating in federal court the

In this case, Plaintiffs have had numerous opportunities to litigate their takings claim against Defendants, and have done so. A review of the lengthy court history reveals that Plaintiffs have received the damages they are entitled to for the taking of the subject property in a final judgment on the merits and that they are now barred from seeking any further damages based upon same. The claims raised in their current Complaint (including issues regarding unlawful delegation) are the same issues that have - - or certainly could have been - - raised below. The underlying facts remain the same. Moreover, the instant claims are being brought against the same parties as before and/or those in privity with said parties and it is undisputed that each of these individuals was capable of suing and being sued.

During oral arguments regarding Defendants' Motions to Dismiss, Plaintiffs vigorously argued that they "reserved" their federal takings claim and therefore should not be precluded from instantly litigating same. In support of this argument, Plaintiffs relied upon *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323 (U.S. 2005). However, *San Remo* made it clear that ". . . the effective reservation of a federal claim was dependent on the condition that plaintiffs take no action to broaden the scope of the state court's review beyond decision of the antecedent state-law issue." *Id.* at 340. Citing to *England v. Louisiana Bd. of Medical Examiners,* 375 U.S. 411 (1964), the Court noted the propriety of reservation there, inasmuch as

> constitutional claims. Similarly, in another condemnation case in which the plaintiff sought to relitigate the state condemnation in the federal court, my learned colleague, Judge Troutman, said: In like situations, the Federal courts have repeatedly held that the condemnee does not have the right to re-litigate the matter in the Federal courts. . . . *The doctrine of res judicata is conclusive not only as to questions actually raised and considered, but to questions which could have been raised and considered in the prior proceedings*.

*Sorger*, 401 F. Supp. at 352 (citations omitted)(emphasis added).

". . . the antecedent state issue requiring abstention <u>was distinct</u> from the reserved federal issue."
*Id.* at 339.  However, in the case currently before this Court, Plaintiffs are attempting to re-litigate their takings claim under the federal Constitution - - a claim that is not distinct from that litigated under Pennsylvania's state Constitution - - by claiming an *England* reservation.[5]

    *San Remo* further explained that:

> "[I]ssues actually decided in valid state-court judgments may well deprive plaintiffs of the "right" to have their federal claims relitigated in federal court. This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules. ***The relevant question in such cases is not whether the plaintiff has been afforded access to a federal forum; rather, the question is whether the state court actually decided an issue of fact or law that was necessary to its judgment***.

*San Remo* at 342 (citations omitted)(emphasis added).

    To that end, the court in *San Remo* was clear to point out that:

> Congress has not expressed any intent to exempt from the full faith and credit statute federal takings claims. Consequently, we apply our normal assumption that the weighty interests in finality and comity trump the interest in giving losing litigants access to an additional appellate tribunal.

*Id.* at 345.

    Accordingly, the court concluded that "Petitioners did not have the right [ ] to seek state review of the same substantive issues they sought to reserve. The purpose of the *England*

---

[5] As Defendant RDAMC properly references in their Motion to Dismiss,

> The Takings Clause of the Pennsylvania Constitution provides: [N]or shall private property be taken or applied to public use, without authority of law and without just compensation first made or secured." Pa. Const., Article 1, Section 10.  Its counterpart in the federal constitution provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., amend. V."

*Memorandum in Support of the Motion to Dismiss of Defendant The Redevelopment Authority of the County of Montgomery,* p. 16, n. 4.

reservation is not to grant plaintiffs a second bite at the apple in their forum of choice." *Id.*[6] at 346. This Court reaches the same conclusion with regard to Plaintiffs' claims and for the reasons set forth above, all such claims are now precluded against all defendants.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are hereby granted with regard to Plaintiffs' federal claims and said claims are dismissed with prejudice.[7] This Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, therefore the same are dismissed without prejudice. An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones II
C. Darnell Jones II      J.

---

[6] *San Remo's* conclusions regarding the purported *England* reservation were also predicated upon the fact that the federal court sent the matter back to the state level for lack of jurisdiction because the state claims were not yet ripe. Absent this underlying jurisdiction in federal court, there was no basis upon which to invoke a reservation, therefore said reservation was for all intents and purposes, a nullity. The same scenario exists in the instant case.

[7] *See De Voren,* at *29 (citations omitted)("Where motion for dismissal is granted as to one defendant it may be granted to another when the applicable basis in law applies to both.")